# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

***

RENE R. OBLITAS,

             Plaintiff,

vs.

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

             Defendant.

2:17-cv-02420-JAD-VCF

**REPORT AND RECOMMENDATION**

MOTION FOR REVERSAL AND/OR
REMAND (ECF No. 17)

Before the Court are Rene Oblitas's Motion for Reversal and/or Remand (ECF No. 17) and the Commissioner's Cross Motion to Affirm and Opposition to Plaintiff's Motion for Reversal (ECF No. 20). For the reasons stated below, the Court recommends that Oblitas's Motion for Reversal and/or Remand be granted. The case should be remanded for a calculation of benefits.

## I.      BACKGROUND

Oblitas applied for Social Security disability benefits on April 29, 2014, alleging disability beginning on December 1, 2009. (AR 174-77).[1] His insured status expired on June 30, 2011. (ECF No. 20 at 8). On September 25, 2014, the Commissioner made a no-disability determination. (AR 92-95). Oblitas requested reconsideration, which was denied. (*Id.* at 96-100). Oblitas requested a de novo hearing before an administrative law judge ("ALJ"). (*Id.* at 101).

During the hearing, Oblitas testified that he suffers from a number of symptoms that prevent him from working. He fractured his left clavicle and had surgery in 2009. (AR 46). Since the surgery, Oblitas cannot grip anything with his left hand. (*Id.*). He cannot use his left hand to button clothing, write with

---

[1] ECF No. 14-1.

a pen, use a knife and fork, turn a door knob, or pull zippers.  (*Id.* at 55).  He also suffers from constant pain in his neck, head, back, and legs.  (*Id.* at 27. 47).  The pain makes it difficult for Oblitas to breathe, dress himself, feed himself, do household chores, lift, squat, bend, reach, walk, kneel, talk, climb stairs, see, complete tasks, concentrate, understand, and use his left hand.  (*Id.* at 27). Oblitas also has deep vein thrombosis. It causes continual swelling in his lower extremities and difficulties wearing shoes.  (*Id.* at 48).  Oblitas uses a cane to ambulate.  (*Id.* at 52).  He cannot stand for more than approximately thirty minutes nor walk more than half a block without stopping.  (*Id.* at 54).  He cannot cook for himself, do household chores, or manage his own medication.  (*Id.* at 52).

The ALJ found Oblitas suffered from four severe impairments: degenerative disc disease of the cervical spine, status-post left clavicle fracture surgeries, history of deep vein thrombosis in his right leg, and degenerative disc disease of the lumbar spine and status-post fusion.  (AR 25).  The ALJ then found that Oblitas had the residual functional capacity ("RFC") to perform light work with several limitations, including the following:

- Oblitas "can occasionally climb stairs and ramps;"

- Oblitas "can never climb ladders, ropes, and scaffolds;"

- Oblitas "can occasionally balance, stoop, kneel, and crouch;"

- Oblitas "can occasionally reach above his head with his non-dominant, left upper extremity;"

- Oblitas "can frequently handle with his non-dominant, left upper extremity;"

- Oblitas "can occasionally push and pull with the non-dominant, left upper extremity."

(*Id.* at 26-27).  A vocational expert concluded that an individual with these limitations could perform Oblitas's past work as a gambling monitor.  (*Id.* at 31, 61).  The ALJ also asked the vocational expert about a hypothetical individual with the above limitations who is "on task for 90 percent or less of the workday, or absence from work two or more days a month."  (*Id.* at 62).  The vocational expert concluded those limitations would be "work preclusive."  (*Id.*).

1    The ALJ concluded that Oblitas was not disabled during the relevant timeframe.  (*Id.* at 31).  In

2    doing so, the ALJ rejected Oblitas's pain and limitations testimony.  He concluded Oblitas's "medically

3    determinable impairments could reasonably be expected to cause the alleged symptoms; however, the

4    claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not

5    entirely consistent with the medical evidence and other evidence in the record."  (*Id.* at 27).

6    Oblitas argues that the ALJ improperly rejected his pain and limitations testimony without

7    providing "specific, clear, and convincing reasons" and used medical evidence in a way that lacks the

8    support of substantial evidence.  (ECF No. 17 at 7-8).  Instead, the ALJ "recit[ed] the medical evidence in

9    support of his or her residual functional capacity determination," did not identify specific testimony and

10   reasons for rejecting that testimony, and used vague notes about Oblitas's "improvements" out of context.

11   (*Id.* at 7-8).  Oblitas also states that the ALJ improperly relied on his daily activities to discount his pain

12   testimony.  (*Id.* at 8-9).  Oblitas asks the Court to overturn the decision and either award benefits or remand

13   for further proceedings.  (*Id.* at 8).

14   The Commissioner argues that the ALJ's decision is free of legal error and has the support of

15   substantial evidence.  The Commissioner believes the medical evidence provides substantial support for

16   the ALJ's decision.  (ECF No. 20 at 8-9).  The Commissioner argues that Oblitas's history of conservative

17   treatment supports the ALJ's decision to reject Oblitas's pain and limitations testimony.  (*Id.* at 9).

18   ## II.    STANDARD OF REVIEW

19   Social Security claimants have a constitutionally protected property interest in social security

20   benefits.  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990); *Mathews v. Eldridge*, 424 U.S. 319

21   (1976).  The Social Security Act authorizes the District Court to review the Commissioner's final decision

22   denying benefits.  *See* 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to

23   refer matters to a U.S. Magistrate Judge).

24   The District Court's review is limited.  The court examines the Commissioner's decision to

25   determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is

1  supported by "substantial evidence." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Batson v.*

2  *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is defined as

3  "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "To determine

4  whether substantial evidence supports the ALJ's decision, a reviewing court must review the

5  administrative record as a whole." *Magnallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting

6  *Davis v. Heckler*, 868 F.2d 323, 329 (9th Cir. 1989).

7  Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is

8  supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion."

9  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938) (defining "a mere scintilla" of evidence). If

10  the evidence supports more than one interpretation, the court must uphold the Commissioner's

11  interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This means that the Commissioner's

12  decision will be upheld if it has any support in the record. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434

13  (5th Cir. 1994) (stating that the court may not reweigh evidence, try the case de novo, or overturn the

14  Commissioner's decision if the evidence preponderates against it).

15  If the court identifies error, it applies the harmless error rule. *See Marsh v. Colvin*, 792 F.3d 1170,

16  1172 (9th Cir. 2015) ("We apply harmless error analysis to social security cases."). "Errors are harmless

17  if they are 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d

18  1104, 1121 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008)). If

19  the ALJ made a harmless error, the court upholds the decision. *See, e.g.*, *Id.* (upholding an ALJ's

20  nondisability finding even though the ALJ did not give germane reasons for rejecting lay testimony since

21  the information was duplicated elsewhere in the record).

22  The Ninth Circuit uses a three-part credit-as-true rule to decide if a case should be remanded for

23  furthering proceedings or an award of benefits. When:

24  (1) [T]he record has been fully developed and further administrative proceedings would serve no

25      useful purpose;

(2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant

   testimony or medical opinion; and

(3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the

   claimant disabled on remand,

the court remands the case only for a calculation of benefits.[2]  *Garrison*, 759 F.3d at 1020.  Under the credit-as-true rule, "[T]he Commissioner must accept, as a matter of law, a claimant's subjective pain testimony if the ALJ fails to articulate sufficient reasons for refusing to credit it."  *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009).  *See also Varney v. Sec. of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988) (adopting the credit-as-true rule because it prevents "multiple administrative proceedings that are duplicative and unnecessary [and] only serve[] to cause the applicant further damage," among other reasons).

### III.    DISCUSSION

#### A.  The ALJ's Assessment of Pain and Limitations Testimony

ALJs use a two-step process to access a claimant's self-described "impairment related symptoms." SSR 16-3p, 2016 SSR LEXIS 4, at *3-*4 (March 24, 2016).  First, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms."  *Id.* at *3.  In this case, the ALJ found Oblitas's "medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (AR 27).

Second, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  SSR 16-3p, 2016 SSR LEXIS 4, at *4 (March 24, 2016).  The Commissioner acknowledges that "some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than

---

[2] The court maintains the discretion to remand the case for further proceedings if the record as a whole creates "serious doubt as to whether the claimant is, in fact, disabled."  *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id.* at *9.

When evaluating the intensity and persistence, the ALJ "examine[s] the entire case record, including the objective medical evidence; [and] an individual's statements about the intensity, persistence, and limiting effects of the symptoms." *Id.* at *10. The ALJ considers whether the individual's statements are consistent with the objective medical evidence. *Id.* at *12. "However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at *12-*13. The ALJ considers the claimant's:

1) Daily activities;
2) The location, duration, frequency, and intensity of pain or other symptoms;
3) Factors that precipitate and aggravate the symptoms;
4) The type, dosage, effectiveness, and side effects of any medication an individual takes…;
5) Treatment, other than medication, an individual receives…;
6) Any other measures other than treatment an individual uses…;
7) Any other factors concerning an individual's function limitations and restrictions.

*Id.* at *18-*19.

Under Ninth Circuit precedent, the ALJ must provide clear and convincing reasons for rejecting a claimant's pain and symptoms testimony. *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) ("If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity…. [W]e require the ALJ to specify which testimony she finds not credible, and then

provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). *See also Garrison*, 759 F.3d at 1016 ("ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

### B. Oblitas's Statements

While the ALJ's report notes several statements made by Oblitas during the hearing, the ALJ fails to set out his reasons for rejecting each statement. To evaluate whether the ALJ erred in rejecting Oblitas's claims, the Court will analyze each relevant statement by Oblitas.

### 1. Oblitas "reported that he suffered from constant pain because of his impairments." (AR 27).

The ALJ failed to discuss Oblitas's back pain, which Oblitas claims is constant. (*See* AR 47 (Oblitas experiences constant back pain and occasionally has shooting pain down his legs)). Oblitas treats his pain with medication, but the medication provides only ten to fifteen minute periods of relief. (AR 50). His medical records document constant back pain. On September 16, 2014, Oblitas had "severe back pain." (*Id.* at 503). On October 31, 2014, Dr. Hemsley noted Oblitas has "chronic back pain." (*Id.* at 432). On November 10, 2014, Oblitas complained of "back pain, joint pain, joint swelling, stiffness, and arthritis." (*Id.* at 488). The ALJ erred by rejecting Oblitas's description of his back pain without clear and convincing evidence or otherwise considering Oblitas's limits from his pain.

The ALJ's rationale for rejecting Oblitas's shoulder pain testimony is not adequate. The ALJ's evaluation had more to do with the range of motion, discussed below, rather than the claimed pain. Oblitas described pain in his shoulder that spread to his neck and head. (AR 47). The ALJ noted that Oblitas's headaches have been treated successfully with medication, but he continues to experience shoulder pain. (*Id.* at 28). The medical records document Oblitas's shoulder pain. While in hospital in late October and early November 2014, Oblitas had "a MRI scan of his left shoulder because of extreme pain." (*Id.* at 480).

In December 2014, Oblitas's shoulder remained "very tender to palpate." (*Id.* at 478). In 2016, "The patient continues with some pain and discomfort at his left shoulder where he had an automobile accident back in 2010." (*Id.* at 693).

The ALJ found Oblitas was not as limited as he claimed because he had no complaints after surgery (Ex. 2F/5), the doctor described the shoulder as well-healed in July 2009 (Ex. 2F/8), and the doctor told Oblitas he could return to "light duty" at work (Ex. 2F/9). (AR 28). This analysis does not address Oblitas's shoulder pain nor cite to specific portions of the record that support rejecting Oblitas's testimony. Therefore, the ALJ did not meet the clear and convincing standard and his decision does not have the support of substantial evidence.

### 2. Oblitas "noted that his impairments affected his abilities to lift, squat, bend, reach, walk, kneel, talk, climb stairs, [and] see." (AR 27).

The ALJ did not provide adequate reasons for rejecting Oblitas's testimony about his mobility difficulties. The ALJ discredited Oblitas's self-described limitations from his degenerative disc disease of the lumbar spine and status-post fusion because "the record does not detail that the claimant's lumbar spine had a limited range of motion associated with such reconstruction." (AR 29). The ALJ also focused on opinion evidence from Dr. Karelitz, the state agency examiner, Dr. Nickles, and Dr. Cross, another state agency examiner. The doctors concluded Oblitas had the RFC to perform light work, with various restrictions. (*See* AR 29). The ALJ found the opinions "consistent with the evidence detailing the claimant only had mild degenerative disc disease of the cervical spine." (*Id.*). Given that the clear and convincing standard is "the most demanding required in Social Security cases," a recitation of medical opinions and two sentences of analysis with no references to the administrative record does not satisfy this standard. *Garrison*, 759 F.3d at 1015; s*ee also Brown-Hunter*, 806 F.3d at 489. The ALJ needed to specify what portions of Oblitas's testimony conflicted with the medical evidence and provide clear and convincing justifications for that finding.

Oblitas alleged mobility problems and told the ALJ he uses a cane to ambulate.  The ALJ only discussed Oblitas's mobility problems in conjunction with his deep vein thrombosis, without considering alternate causes. The ALJ needed to address the other potential causes of Oblitas's mobility difficulties and analyze Oblitas's testimony in light of the potential causal factors.  This omission is a significant error.  Without this information, the Court cannot conclude the ALJ's decision has the support of substantial evidence.

The ALJ did not err when discounting Oblitas's limitations about his leg.  The ALJ determined Oblitas's deep vein thrombosis related back to before the date last insured but discounted the resulting limitations because "treatment records from February 2016 indicate imaging was negative for deep vein thrombosis and showed resolution of previously present right calf deep vein thrombosis (Ex. 26F/2)."  Although the doctor indicated Oblitas has a chronic swollen right leg (AR 693), the radiologist's report provides enough evidence to support the ALJ's deep vein thrombosis findings.  Because the imaging supports the ALJ's decision, the Court cannot conclude that the ALJ erred.

The ALJ erred when discounted Oblitas's mobility limitations as inconsistent with his daily activities, which include walking his dog, though the error was not outcome-determinative.  (AR 30).  The ALJ relied on a doctor's report from 2012 (Exhibit 25F/2), which indicated Oblitas walked dogs.  (AR 30).  In 2014, though, Oblitas told the ALJ he had to give his dog away: "I used to have my pet, so I have to give it away, my pet.  Because I can't feel it in there, I can't run (inaudible) behind my doggies."  (AR 53).  Occasionally walking a dog is not necessarily incompatible with a disability that precludes working. *See Garrison*, 759 F.3d at 1016.  The record does not have adequate details regarding the dog-walking, such as the distance Oblitas walked, how frequently he walked the dog, or even when he owned the dog. (AR 53).  The record does not include enough information to support the ALJ's analysis or allow the Court to make conclusions about the dog walking.

> **3.  Oblitas noted that his impairment affected his abilities to "complete tasks, concentrate, [and] understand."  (AR 27).**

Oblitas stated that he is "beginning to losing [sic] my concentration, my speech, and I forgot the dates." (AR 52). He experiences disorientation to place. (*Id.*). The ALJ asked the vocational expert about an individual with who would be on task for ninety percent or less during the work day. (*Id.* at 62). But, the ALJ did not explain why Oblitas is not this hypothetical individual nor consider how Oblitas's impairments impacted his cognitive abilities. Because this information is not duplicated elsewhere, the ALJ made a harmful error by failing to discuss these limitations.

### 4. Oblitas "further testified that he is unable to hold items with his left hand." (AR 27).

The ALJ analyzed Oblitas's hand mobility limitations in the context of the expert opinions. The state examining physicians opined that Oblitas can occasionally push and pull with his left upper extremity without explaining the basis of this opinion. (AR 29). In 2013, Dr. Zeller, Oblitas's treating physician, opined that Oblitas could work "with restrictions of motion and strength in the left shoulder." (*Id.*). In 2016, Dr. Zeller opined "the claimant was very limited in his left arm use in all planes." (*Id.*). The ALJ gave no weight to this opinion because it did not date back to the date last insured and were not "supported by the record, which details sporadic treatment for the claimant's impairments." (*Id.* at 29-30). The ALJ never fully weighed the medical opinions, analyzed the conflict between them, or discussed Oblitas's testimony. Therefore, the ALJ did not meet the clear and convincing standard required to justify rejecting Oblitas's testimony.

### C. Credit-as-True Rule

This case satisfies all three requirements of the credit-as-true test. The record is fully developed. Substantial evidence supports Oblitas's self-described pain and limitations. The ALJ made legal errors when rejecting Oblitas's pain and limitations testimony. Therefore, the Court should now accept the testimony as true. *Vasquez*, 572 F.3d at 593.

If the improperly discredited testimony were credited as true, the ALJ would be required to find that Oblitas is disabled. He cannot use his left hand to grip things or open doors. (AR 46, 55). He suffers

from chronic pain.  (*Id.* at 47).  The pain affects his concentration.  (*Id.* at 52).  Oblitas cannot walk for more than half a block without stopping and cannot stand for more than thirty minutes.  (*Id.* at 54).

Given these limitations, it is clear Oblitas cannot work and the case must be remanded for calculation of benefits.  The vocational expert already concluded that an individual with Oblitas's cognitive impairments would be precluded from working.  (AR 62).  Oblitas has been waiting for benefits for more than four years.  (*Id.* at 174).  No further information is necessary, so remanding for continued proceedings would be inefficient and wasteful.

## IV.    CONCLUSION

The ALJ made legal errors when rejecting some of Oblitas's pain and limitations testimony.  If the testimony had not been rejected, Oblitas would have received benefits.  Further proceedings are unnecessary so the case should be remanded for calculation of benefits.

Accordingly, and for good cause shown,

IT IS RECOMMENDED that Oblitas's Motion for Reversal and/or Remand (ECF No. 17) be GRANTED.

IT IS FURTHER RECOMMENDED that the Commissioner's Cross Motion to Affirm and Opposition to Plaintiff's Motion for Reversal (ECF No. 20) be DENIED.

IT IS FURTHER RECOMMENDED that the case be remanded to the Social Security Administration for a calculation of benefits.

DATED this 17th day of July, 2018.

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE